**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
NUMAN ADNAN AL-KABY, *et al.,*          )
                                        )
                     Petitioners,       )
                                        )
          v.                            )          No. 05-1739 (HHK)
                                        )
GEORGE W. BUSH, *et al.*,               )
                                        )
                     Respondents.       )
_____)

**RESPONDENTS' EMERGENCY MOTION FOR RECONSIDERATION**
**OF DATES SET FORTH IN ORDER TO SHOW CAUSE**
**AND OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER**[1]

Petitioners filed a Petition for Writ of Habeas Corpus on Wednesday, August 28, 2005,

seeking a writ directing the release from United States custody of petitioner Numan Adnan Al-

Kaby, and alleging that Al-Kaby is in the custody of United States military forces in Iraq.  In

addition to seeking Al-Kaby's release, the Petition also seeks, <u>inter alia</u>, an order to allow counsel

to meet and confer with Al-Kaby in private and unmonitored attorney-client conversations, both

by phone and in person, and an order to cease all interrogations of Al-Kaby while this litigation is

pending.  Along with the Petition, Petitioners also filed a Motion for an Order to Show Cause

Why a Writ of Habeas Corpus Should Not Issue and Application for Temporary Restraining

Order ("Motion").  As the caption of the document suggests, Petitioners' filing seeks both (i) an

Order to Show Cause why the writ should not be granted, and (ii) a Temporary Restraining

Order.  Although the Petition itself is supported by various declarations, Petitioners have not

_____

[1] By filing this Motion, Respondents do not concede that this Court has jurisdiction over
this matter, and expressly reserve the right to raise such jurisdictional objections in response to
the Petition.

provided any legal citation or argument in support of their motion for a temporary restraining order.

Shortly after 1:00 p.m. on Friday, September 2, 2005, the undersigned contacted Chambers in order to inform the Court that Respondents intended to file a response to Petitioners' motion, and that such a response would be filed as soon as possible, hopefully within the hour. Shortly thereafter, and before Respondents had finalized their filing, the undersigned received ECF notification of the Order to Show Cause requiring Respondents to show cause why the writ should not issue by noon on Tuesday, September 6, 2005. In light of this timing, and the delays in the transmittal of ECF notifications, Respondents do not know whether the Order was entered before or after the undersigned contacted Chambers.

In light of the above, and for the reasons set forth below, Respondents respectfully request that the Court reconsider the deadlines set forth in the Order to Show Cause and provide Respondents with additional time in which to show cause why the writ should not be granted. Respondents also request that Petitioners' application for a Temporary Restraining Order be denied.

**I.    Respondents Request Twenty-Three Days to Respond to the Order to Show Cause, Or, In the Alternative, the Three Business Days Contemplated by Section 2243.**

28 U.S.C. § 2243 provides that a "judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the face of the application that the applicant or person detained is not entitled thereto." Petitioners apparently recognize that issuance of the writ "forthwith" would be inappropriate in this case, and asked instead that this

Court issue an Order to Show Cause requiring Respondents to respond within 72 hours. Motion at 2, ¶ 4.

Respondents now respectfully request that the Court reconsider the deadlines set forth in the Order to Show Cause and allow Respondents the full twenty-three day response period contemplated by the statute. In the alternative, Respondents request that they be provided the three business days to respond to the Order contemplated by the statute and Federal Rule of Civil Procedure 6(a).

Section 2243 provides that any order to show cause "shall be returned within three days, unless for good cause additional time, not exceeding twenty days, is allowed." 28 U.S.C. § 2243.[2]  Additional time to respond to the order to show cause is appropriate in this case for numerous reasons. This is not a standard habeas case challenging an inmate's conviction and sentence, in which a record of the underlying proceeding is readily available. Rather, the Petition alleges that Al-Kaby is in the custody of the United States Armed Forces in Iraq. Ascertaining the factual circumstances surrounding al-Kaby's alleged detention will take additional time, in light of the fact that those with personal knowledge of such facts are presumably located in Iraq and engaged in the United States' military and other operations there. Identifying, locating, and contacting these individuals is likely to take time, as will obtaining from them information

---

[2] Section 2243 refers to twenty days of additional time, in addition to the minimum three days provided by the statute, for a total of twenty-three days. Respondents note that the Court may apply the Rules Governing Section 2254 Cases ("Habeas Rules") to this habeas case, although it was brought pursuant to 28 U.S.C. § 2241. See Habeas Rule 1(b). The Habeas Rules provide the Court "greater flexibility" in fashioning a time to respond than does Section 2243. See Habeas Rule 4, Advisory Committee Note, 1976 Adoption. Respondents' request that they be afforded twenty-three days to respond to the Order to Show Cause is appropriate under either legal framework.

3

concerning the circumstances surrounding the alleged detention. This fact alone justifies

granting Respondents additional time to respond. Moreover, the Petition raises novel factual and

legal questions, as it seeks to have a federal district court adjudicate the legality of the military's

alleged detention of a non-citizen overseas in the course of on-going military operations. Finally,

the Petition was filed just two days before a long holiday weekend, and virtually the entire period

of time between the filing of the Order to Show Cause and its return date will be over that

holiday weekend. Many of the counsel who would normally be involved in this matter are thus

currently unavailable, making it more difficult to ascertain the facts and circumstances that may

be relevant to this proceeding and to present appropriate legal arguments concerning the matter.

For all of these reasons, Respondents respectfully submit that "good cause" exists for providing

Respondents with twenty-three days to respond to the Order to Show Cause.

       Alternatively, Respondents request that they be provided the three business days to

respond to the Order to Show Cause contemplated by Section 2243. As noted above, Section

2243 provides a minimum of three days to respond to any such order. Although the statute does

not specify three "business" days, Federal Rule of Civil Procedure 6(a) provides that "in

computing any period of time prescribed or allowed by . . . any applicable statute," Saturdays,

Sundays and legal holidays are to be excluded from the computation when the period of time

prescribed is less than 11 days. Fed. R. Civ. P. 6(a). Labor Day, which falls on Monday,

September 5, 2005, is specifically listed as a legal holiday in Rule 6(a). Id. In keeping with both

the letter and the spirit of Rule 6(a), and in light of the considerations set forth above,

Respondents respectfully request that they be afforded three business days, or until Thursday,

September 8, 2005, to respond to the Order to Show Cause.

**II.    Petitioners' Application for a Temporary Restraining Order Should be Denied**

As noted above, Petitioners have also sought a temporary restraining order ("TRO")

allowing counsel to meet and confer with Al-Kaby in private and in person, preventing further

interrogations of Al-Kaby, and requiring Al-Kaby to be present, in person or by telephone, at any

hearings in this matter. Motion at 1, ¶ 2. Petitioners have not provided any legal support

whatsoever for the extraordinary preliminary relief that they seek. Petitioners' application for a

TRO should be denied because (i) Petitioners have failed to show any irreparable harm that

would be remedied by the relief they seek; (ii) the relief they seek would do more than simply

maintain the status quo, but rather would operate as a mandatory injunction, and (iii) the relief

they seek would inject this Court into grave matters of national security.

It is black letter law in this Circuit that a "preliminary injunction [or temporary restraining

order] is an extraordinary and drastic remedy, one that should not be granted unless the movant,

by a clear showing, carries the burden of persuasion." Nat'l Head Start Ass'n v. Dep't of Health

& Human Servs., 297 F. Supp. 2d 242, 246 (D.D.C. 2004) (internal quotation marks omitted).

See also Emily's List v. Federal Election Comm'n, 362 F. Supp. 2d 43, 51 (D.D.C. 2005)

(preliminary injunction "is considered an extraordinary remedy"); Arrow Air, Inc. v. United

States, 649 F. Supp. 993, 998 (D.D.C. 1986) ("A preliminary injunction is an extraordinary

equitable remedy that may be granted only upon a clear showing of entitlement."); Association of

Flight Attendants-CWA v. Pension Benefit Guar. Corp., __ F. Supp. 2d __, 2005 WL 1350061,

at *4 (D.D.C., June 8, 2005) ("A preliminary injunction is an extraordinary form of relief that

should not be granted absent a clear and convincing showing by the moving party."). As noted

above, Petitioners here have not adduced any legal support for the extraordinary remedy that they

5

seek.

Moreover, "[a] showing of irreparable harm is the sine qua non of the preliminary injunction inquiry." Trudeau v. Federal Trade Comm'n, --- F.Supp.2d ----, 2005 WL 2037360 (D.D.C. Aug. 25, 2005), quoting Experience Works, Inc. v. Chao, 267 F. Supp. 2d 93, 96 (D.D.C. 2003). Petitioners here have not alleged, let alone demonstrated, any irreparable harm that would befall Mr. Al-Kaby in the event that the TRO they request is not issued. The TRO requests three things (meeting with counsel, preventing interrogations, allowing Mr. Al-Kaby's presence at hearings), and it is entirely unclear how Mr. Al-Kaby would be *irreparably* harmed in their absence.[3] At a minimum, the Court should consider further briefing by the parties before providing any such a remedy.

The relief Petitioners seek is even more extraordinary because they seek not simply to preserve the status quo pending a hearing on the merits, the traditional purpose of a TRO or preliminary injunction, but rather to change the status quo by requiring Respondents to take certain affirmative actions (or refrain from taking actions they are currently free to undertake). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Therefore, "where an injunction is mandatory --- that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act --- the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage will result from the denial of the injunction." Phillip v.

---

[3] Thus, for example, although Petitioners request a Court order prohibiting Respondents from interrogating Mr. Al-Kaby while this litigation is pending, they do not even allege, let alone demonstrate, that any such interrogations are ongoing or planned.

Fairfield Univ., 118 F.3d 131, 133 (2d Cir. 1997) (internal citation omitted); see also Columbia

Children's Hosp. for Women Foundation v. Bank of Tokyo-Mitsubishi, 15 F. Supp. 2d 1, 4

(D.D.C. 1997), aff'd, 159 F.3d 636 (D.C. Cir. 1998); Mylan Pharm, Inc. v. Shalala, 81 F. Supp.

2d 30, 36 (D.D.C. 2000) (plaintiff "faces an additional hurdle [when] it seeks a mandatory

injunction as opposed to a prohibitive injunction.").  As the Court of Appeals has noted, "the

power to issue a preliminary injunction, *especially a mandatory one*, should be sparingly

exercised." Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (emphasis added).  See

also Stanley v. Univ. of Southern California, 13 F.3d 1313, 1319 (9th Cir. 1994) (where "a party

seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente

lite, courts should be extremely cautious about issuing a preliminary injunction.") (citation

omitted).

      There is no question that the TRO that Petitioners seek would do more than simply

preserve the status quo. Thus, for example, the provision requiring Respondents to allow counsel

for Petitioners to immediately meet and confer with Mr. Al-Kaby would require Respondents to

take affirmative steps to alter the current alleged conditions of Mr. Al-Kaby's confinement.

Similarly, the request that Respondents be enjoined from interrogating Mr. Al-Kaby would

restrain Respondents from acting in a way that they have heretofore been free to act; that is, the

request would alter, rather than preserve, the status quo.  Petitioners have not even met the

burden of establishing their entitlement to ordinary preliminary injunctive relief; they certainly

have not met the heightened burden applicable to requests for mandatory injunctive relief such as

this.

      Finally, the TRO should be denied because it would inject this Court into sensitive

7

matters of national security, without any basis to do so.  An order requiring Respondents to

provide Mr. Al-Kaby with unfettered access to counsel, or prohibiting his interrogation, would

inject this Court into the conduct of the foreign relations and military affairs of the United States

at a time of ongoing armed conflict and would require this Court to "approach the outer limit of

its constitutional authority," Palestine Information Office v. Schultz, 674 F. Supp. 910, 917

(D.D.C. 1987), aff'd, 853 F.2d 932 (D.C. Cir. 1988), or to surpass it.

 Recognizing the political branches' exclusive role in the exercise of the Nation's foreign

relations, and the limited institutional competence of the judiciary in making determinations

regarding foreign affairs, this Circuit has long recognized that where, as here, the

> requested injunctive relief deeply intrudes into the core concerns of the executive
> branch, a court is quite wrong in routinely applying to th[e] case . . . traditional
> standards . . . .  A request for an order directing action by the Secretary of State in
> foreign affairs plainly constitutes such an intrusion. . . .  [W]e think it clear that if
> such a request is justiciable, the party seeking this kind of relief would have to
> make an *extraordinarily strong showing* to succeed.

Adams v. Vance, 570 F.2d 950, 954-55 (D.C. Cir. 1978) (internal quotation and citation omitted)

(emphasis added).  See also Office of Personnel Mgmt. v. AFGE, 473 U.S. 1301, 1304 (1985)

(noting that "the District Court's grant of a temporary restraining order in Adams was

extraordinary").  Indeed, even when plaintiffs have established entitlement to some relief – as

they have not done here – courts have been reluctant to intrude into areas involving foreign

affairs.  See, e.g., Hirt v. Richardson, 127 F. Supp. 2d 833, 845-49 (S.D. Mich. 1999) (finding

plaintiffs likely to succeed on merits of claims seeking to enjoin shipment of weapons-grade

plutonium to Canadian border and to be irreparably injured absent preliminary injunction;

declining to enter preliminary injunctive relief in light of the foreign policy implications);

National Org. for the Reform of Marijuana Laws v. U.S. Dep't of State, 452 F. Supp. 1226, 1234 (D.D.C. 1978) (although court ordered government to prepare environmental impact statement in connection with program that involved foreign state, court refused to order United States to refrain from working together with that state on the program because to do so would infringe on President's authority to conduct foreign relations).

The reasoning of Adams and the other cases cited above is equally applicable here, where the requested injunctive relief "deeply intrudes" into a separate "core concern[] of the executive branch" – namely, the President's authority as Commander in Chief.  See U.S. Const., art. II, § 2. See also Hamdi v. Rumsfeld, 542 U.S. 507, __, 124 S. Ct. 2633, 2647 ("Without doubt, our Constitution recognizes that core strategic matters of warmaking belong in the hands of those who are best positioned and most politically accountable for making them.); Department of Navy v. Egan, 484 U.S. 518, 530 (1988) (noting the reluctance of the courts "to intrude upon the authority of the Executive in military and national security affairs"); Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 587 (1952) (acknowledging "broad powers in military commanders engaged in day-to-day fighting in a theater of war").

And there can be no doubt the relief requested would intrude into the Executive's authority in this regard.  Just by way of example, the prohibition on further interrogation of Mr. Al-Kaby would prevent commanders in the field from interrogating him even if they had reason to believe that he was aware of an imminent insurgent action against United States forces or innocent Iraqi civilians.  Such battlefield judgments are appropriately left in the hands of the "military commanders engaged in day-to-day fighting in a theater of war."  Id.  Certainly, the record before the Court does not warrant the extraordinary relief sought by Petitioners.

9

In light of Petitioners' abject failure to meet their burden, and the potentially grave harm to the Executive should the Court enter the relief requested, the application for a TRO should be denied.

## CONCLUSION

For the reasons set forth above, Respondents respectfully request that the Court reconsider the deadlines set forth in the Order to Show Cause and provide Respondents with twenty-three days to respond to the Order.  In the alternative, Respondents request that they be provided three full business days, or until Thursday, September 8, 2005, to respond to the Order. Respondents also respectfully request that Petitioners' application for a TRO be denied.

Dated: September 2, 2005                    Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General

                                            KENNETH L. WAINSTEIN
                                            United States Attorney


                                            /s/ Ori Lev & Edward H. White_____
                                            JOSEPH H. HUNT (D.C. Bar No. 431134)
                                            VINCENT M. GARVEY (D.C. Bar No. 127191)
                                            ORI LEV (D.C. Bar No. 452565)
                                            EDWARD  H. WHITE (D.C. Bar No. 468531)
                                            Attorneys
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Avenue, N.W.  Room 6110
                                            Washington, D.C. 20530
                                            Tel: (202) 514-5108
                                            Fax: (202) 318-4268
                                            email: ned.white@usdoj.gov

                                            Attorneys for Respondents