UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NUMAN ADNAN AL-KABY, et al.,

Petitioners

v.

No. 05-cv-1739 (HHK)

GEORGE W. BUSH, et al.,

Respondents

**PETITIONERS' OPPOSITION TO RESPONDENTS' EMERGENCY MOTION FOR
RECONSIDERATION OF DATES SET FORTH IN ORDER TO SHOW CAUSE AND
REPLY TO APPLICATION FOR TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

The government's emergency motion makes no attempt to contest the Petitioners' key

assertion, supported by uncontroverted affidavit, that a military tribunal determined Mr. Al-Kaby

to be an "Innocent Civilian" exactly two months ago, on July 4, 2005.  Presumably, the

government could have quickly confirmed or denied this fact and submitted an affidavit to the

Court, but did not do so.  Having chosen to bypass the question of Mr. Al-Kaby's adjudged

innocence, the government instead seeks to extend its already unlawful five-month detention of

an innocent lawful permanent resident in solitary confinement by still another month, leaving

him incommunicado and out of the reach of his counsel and family, and perhaps subjecting him

to further interrogations outside the presence of counsel.  These requests are not only baseless

but also in utter disregard of Justice O'Connor's recent admonition that persons in military

detention have a substantial liberty interest in being free from prolonged, arbitrary physical detention. Hamdi v. Rumsfeld, 542 U.S. 507, 124 S.Ct. 2633, 2646 (2004).

As the government acknowledges, the habeas corpus statute requires that "the order to show cause . . . shall be returned within three days, unless for good cause additional time, not exceeding twenty days, is allowed." 28 U.S.C. § 2243. The government's motion for an extension of time must be denied as lacking "good cause."

The habeas petition filed four days ago alerted the government to all the significant facts of Mr. Al-Kaby's detention, including the names of U.S. Army personnel who convened a Detainee Status Board hearing in his case, the existence of a military court transcript and military letter confirming his innocence, and his exact location at Camp Cropper. The government, therefore, cannot possibly need almost a month to locate the appropriate government personnel in Iraq, the case file, and other pertinent documents relating to Mr. Al-Kaby's detention. In addition, the government likely possesses complete immigration and investigative FBI files concerning Mr. Al-Kaby, as he is a long-time lawful permanent resident of the U.S. who voluntarily gave information to the FBI on numerous occasions to assist the U.S. invasion of Iraq, and even worked for the U.S. military in Iraq for a time as an interpreter. Even if there could ever be "good cause" to detain a U.S. permanent resident who is adjudged to be an "Innocent Civilian" for an additional twenty days in solitary confinement in Iraq, the government has not shown such "good cause" here.

The government's opposition to Petitioner's application for a temporary restraining order is likewise unavailing for several reasons. First, it is striking that the government has not even argued that Petitioner is unlikely to succeed on the merits. Indeed, by failing to contest his status as an "Innocent Civilian," the government has implicitly conceded for purposes of the pending

TRO motion that Mr. Al-Kaby has a substantial likelihood of success, since by definition there can be no justification for detaining "Innocent Civilians."  Second, it is well beyond dispute that the continued detention in solitary confinement of a lawful permanent resident who is an "Innocent Civilian," subject to interrogation and without access to counsel, constitutes irreparable harm.  The Supreme Court recently admonished that the government may not "minimize the importance and fundamental nature of the individual's right to liberty," even for persons in military detention.  Hamdi, 124 S.Ct. at 2646 (internal citation omitted).  Third, the Supreme Court has explicitly rejected the government's arguments that a habeas court's review of an individual's military detention would unduly interfere with the Executive's powers over war and foreign relations.  Indeed, the Supreme Court has held that a court sitting in habeas jurisdiction over the petition of a person in military detention must ensure that due process requirements, including access to counsel, are met.  Hamdi, 124 S.Ct. at 2651.  The temporary restraining order sought by Petitioners would merely ensure that Mr. Al-Kaby receives the due process protection to which he is entitled, by granting him access to counsel and freedom from interrogation.

The government's silence on the issue of Mr. Al-Kaby's innocence – even at this early stage – speaks volumes.[1]  Its attempts to delay justice for a lawful permanent resident found innocent two months ago by a military tribunal established and convened by the government must be rejected.

---

[1] Fully one-fourth of the 10,000 prisoners held in Iraq by the U.S. government are innocent, according to a U.S. commander in charge of a U.S. detention facility in Iraq.  See Ted Koppel, "August 24, 2005: Prisoners in Iraq, Nightline Closing Thoughts," found at http://abcnews.go.com/Nightline/ClosingThoughts/story?id=1065771 (last visited September 4, 2005).

I.    **The Government Has Not Shown Good Cause For Subjecting A Lawful Permanent Resident Who Has Been Found To Be an "Innocent Civilian" To Twenty More Days of Solitary Confinement For The Government To Answer The Petition**

28 U.S.C. § 2243 makes clear that a court entertaining a habeas petition must order a return on an order to show cause within three days "unless for good cause additional time, not exceeding twenty days, is allowed." It is the government's burden to show "good cause" for an extension of time to answer the petition.

The government's conclusory assertion, completely unsupported by any affidavits or other evidence, that it cannot locate the appropriate military personnel in Iraq to ascertain the facts of Mr. Al-Kaby's case without an additional twenty days, see Resp. Emerg. Mot. at 3-4, is simply groundless and therefore insufficient to show "good cause." The government does not dispute that the U.S. military held a three-judge Detainee Status Board hearing for Mr. Al-Kaby on July 4, 2005, and that the hearing cleared him of all charges and determined him to be an "Innocent Civilian" under the Geneva Conventions. See Declaration of Cyrus Kar in Support of Petition ("Kar Decl."), ¶¶ 30-38; Exhs. 2, 3. Notwithstanding the fact that any functioning system of justice in Iraq or elsewhere must have access to records of judicial hearings, Petitioners have informed the government of the names of U.S. Army personnel in charge of the Detainee Status Board for Mr. Al-Kaby. Id., Exhs. 2, 3. Petitioners have also made the government aware of the existence of a transcript of Mr. Al-Kaby's Detainee Status Board hearing and a letter from the U.S. Army, acknowledged by Mr. Al-Kaby, determining him to be an "Innocent Civilian" under the Geneva Conventions. Id. Petitioners have gone so far, moreover, as to identify by name a U.S. Embassy official in Iraq who worked on Mr. Al-Kaby's case as recently as July 10, 2005. Kar Decl., ¶ 40. Petitioners have further alerted the government to the fact that the FBI likely has a complete file concerning Mr. Al-Kaby, since he

voluntarily gave information to the FBI to assist the U.S. invasion of Iraq and even took a lie

detector test to prove that the information he gave was truthful.  See Declaration of Dawn

Bouaouad ("Bouaouad Decl."), ¶¶ 15-16.  Under these circumstances, the government's

protestations that it needs almost a month to locate the relevant government personnel and

examine the relevant documents, unsupported by any evidence in the form of affidavits attesting

to these facts, are clearly implausible.[2]

In addition, ascertaining even ancillary facts about Mr. Al-Kaby should not be difficult

because he is no stranger to the U.S. government.  He is a decade-long lawful permanent resident

of the United States whose refugee and immigration records are in the government's custody.

See Bouaouad Decl., ¶11 (Mr. Al-Kaby applied to the U.S. government for a refugee passport

before his trip to Iraq).  Also, he worked for the U.S. military in Iraq as an interpreter in early

2005, no doubt after a military background check was completed.  Declaration of Eman Al-

Kaby, ¶ 5.  The government's suggestion that it needs time to ascertain the underlying facts

surrounding Mr. Al-Kaby's detention is particularly implausible in light of the government's

having detained Mr. Al-Kaby for the past five months.  In any case, the habeas statute authorizes

this court, in its discretion, to allow the government to supplement its return at a later time if

additional material information is discovered.  Given the extensive record in this case, nothing

prevents the government from immediately and timely ascertaining the relevant facts.

The government also argues that this habeas petition poses novel legal questions, which

purportedly require additional time for briefing.  Resp. Emerg. Mot.  at 4.  The only truly novel

question here is chilling in its articulation and irrelevant to the government's motion here:

---

[2] Accordingly, Petitioners request that the government furnish this Court and counsel for
Petitioners with copies of all files and documents obtained by government counsel relating to
Mr. Al-Kaby's arrest, detention, and hearing before and a military tribunal, including the written
determination that Mr. Al-Kaby is an "Innocent Civilian" under the Geneva Conventions.

whether a determination of innocence of a lawful permanent resident by a military tribunal may

be arbitrarily voided or ignored such that liberty becomes illusory.  All that is required in the

government's return to this habeas petition is "the true cause of the detention."  28 U.S.C. §

2243.  The government cannot possibly require almost a month to state the law authorizing Mr.

Al-Kaby's continued detention, especially when Mr. Al-Kaby's case was already tried before

military judges two months ago, presumably after a three-month government investigation had

been completed.  Additionally, the government has repeatedly briefed and argued the legality of

military detention of individuals during the "war on terror" in similar cases to other courts in this

district, circuit, and indeed to the Supreme Court.  See Hamdi v. Rumsfeld, 542 U.S. 507 (2004);

Rasul v. Bush, 542 U.S. 466 (2004); Hamdan v. Rumsfeld, 415 F.3d 33 (D.C. Cir. 2005); In Re

Guantanamo Detainee Cases, 355 F.Supp.2d 443 (D.D.C. 2005).  Once the government provides

the Court with the basis for Mr. Al-Kaby's continued detention, this Court may perform its

traditional habeas function of determining the lawfulness of his detention.  As the Supreme Court

has ruled, courts hearing the habeas petitions of persons held in military detention must ensure

that minimum due process requirements are met.  Hamdi, 124 S.Ct. at 2652.  What makes this

case exceptional – the government's failure to release Mr. Al-Kaby after a military tribunal

explicitly directed his release over two months ago – cuts sharply in the direction of speedy

resolution, not further delay.

        The government's final reason for requesting additional time is that government counsel

are not available over the Labor Day holiday weekend.  Resp. Emerg. Mot. at 4.  Surely the

prejudice to Mr. Al-Kaby in suffering through yet another month of incommunicado detention in

solitary confinement outweighs any inconvenience to government counsel of working through a

federal holiday.  Indeed, the government may be able to communicate with military personnel in

Iraq on Labor Day to quickly confirm the relevant facts in Mr. Al-Kaby's case, if it has not already done so.

## II.    As a Long-Time Lawful Permanent Resident Who Has Been Adjudged Innocent, Mr. Al-Kaby Should Be Granted Access to Counsel And Freedom From Further Interrogation Pending This Litigation

Petitioners seek a temporary restraining order (a) allowing counsel for Petitioners to immediately meet and confer with Mr. Al-Kaby, in private and unmonitored attorney-client conversations; (b) preventing further interrogations of Mr. Al-Kaby while this litigation is pending; and (c) directing the government to allow Mr. Al-Kaby to be present, in person or telephonically, at any and all hearings on the petition for a writ of habeas corpus.

In considering whether to grant a temporary restraining order, "the court must consider whether: (1) the party seeking the injunction has a substantial likelihood of success on the merits; (2) the party seeking the injunction will be irreparably injured if relief is withheld; (3) an injunction will not substantially harm other parties; and (4) an injunction would further the public interest." CSX Transp., Inc. v. Williams, 406 F.3d 667, 670 (D.C. Cir. 2005). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir.1995). A temporary restraining order may issue, for example, "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." Id.

Here, Mr. Al-Kaby has a substantial likelihood of success on the merits. As set forth in the habeas petition, he has been determined to be an "Innocent Civilian" by a unanimous military Detainee Status Board. Kar Decl., ¶¶30-38. According to the government's own definition, an

"Innocent Civilian" in Iraq is "a civilian who does not pose a threat to the security of coalition forces, or its mission, and should be immediately returned to his home or released."  Kar Decl., Exh. 3.  The government has not refuted the fact that Mr. Al-Kaby is an "Innocent Civilian." Neither does it put forth any reasons for his continued detention.  The prolonged, arbitrary, and indefinite non-criminal detention of a lawful permanent resident such as Mr. Al-Kaby who has been determined to be an "Innocent Civilian" violates, indeed demolishes, the Due Process Clause of the Fifth Amendment, applicable customary international law, and the Geneva Conventions.  See Petition for a Writ of Habeas Corpus, ¶¶ 49-64; Zadvydas v. Davis, 533 U.S. 678 (2001) (recognizing that indefinite detention of lawful permanent residents would raise substantial Due Process concerns); Landon v. Plasencia, 459 U.S. 21 (1982) (recognizing greater Due Process rights of lawful permanent residents).

While implicitly conceding that Mr. Al-Kaby is likely to succeed on the merits, the government shockingly argues that Mr. Al-Kaby would suffer no irreparable injury from twenty additional days of illegal solitary confinement without access to counsel.  It is certain that the government's continued deprivation of Mr. Al-Kaby's access to counsel, as well as his continued subjection to interrogations, will irreparably harm Mr. Al-Kaby.  Resp. Emerg. Mot. at 6-7.  The Supreme Court made clear in Hamdi that even persons adjudged by the military to be "enemy combatants" "unquestionably [have] the right to access to counsel" in connection with proceedings regarding the lawfulness of their military detention.  Hamdi, 124 S.Ct. at 2652.  As an "Innocent Civilian" who has been found not to be an enemy combatant, and as a lawful permanent resident entitled to the protection of the Fifth Amendment, Mr. Al-Kaby certainly has as much, if not more, right to access to counsel than did the enemy combatant detained in Hamdi. Deprivation of the right to counsel greatly prejudices Mr. Al-Kaby by hindering his ability to

argue for his own release from detention.  Since Mr. Al-Kaby had trouble understanding the

letter from the U.S. military finding him innocent, <u>see</u> Kar Decl. ¶ 38, he certainly needs

experienced legal assistance with his case and will be harmed by any effort by the government to

interrogate him without the benefit of counsel.

 The TRO sought by petitioner would not harm the government in the least, and it would

further the public interest by affording the constitutional right to counsel to a lawful permanent

resident who is held in military detention even after being adjudged innocent.  The government

does not offer any argument about how it would be harmed by the TRO except to state

conclusorily that it would be restrained in its interrogation practices and would have to alter the

conditions of Mr. Al-Kaby's confinement.  Resp. Emerg. Mot. at 7.  These would, of course, be

precisely the effects of the TRO, but the government does not explain why these effects would

harm the government in any way – unless the government believes that it is harmed by being

required to obey the law.  The government's silence as to the reasons for continued

interrogations is as telling as its silence about Mr. Al-Kaby's adjudged innocence.  Since Mr. Al-

Kaby has been found to be an "Innocent Civilian," there can be no lawful reason for

interrogations outside the presence of counsel or deprivation of the right to counsel.  To prevent

the government from harassing or coercing an innocent man in its custody and from holding him

incommunicado surely does not harm the government in any way.  The TRO would, in fact,

promote the public interest by upholding the constitutional right of access to counsel that the

Supreme Court confirmed just last year.  <u>Hamdi</u>, 124 S.Ct. at 2651.

 The government argues incorrectly that the TRO sought by petitioners would change the

status quo rather than preserve it, and therefore should be denied.  Resp. Emerg. Mot. at 7.  This

argument too is meritless.  If Mr. Al-Kaby were now denied access to counsel and subjected to

further interrogations, the government would be free, for example, to coerce his "confession" to some trumped-up charge. Presumably, the government would be at liberty to employ deception and psychological stress factors to interrogate him. Providing Mr. Al-Kaby access to counsel and freedom from interrogation would preserve the status quo by prohibiting the government from taking action lacking in factual basis or legal authority.

Finally, the government attempts to recast arguments it has already lost before the Supreme Court. The government argues that the Court should not grant the TRO because in so doing, it would inject itself into sensitive matters of national security, foreign relations, and military affairs, all of which should be left exclusively to the Executive Branch. Resp. Emerg. Mot. at 8-9. It argues that granting this TRO would be an intrusion into the Executive's war powers and would interfere with military commanders' ability to make battlefield judgments. Id. at 9.

Just last year, the Supreme Court explicitly rejected these same arguments in a case involving military detention. In Hamdi, the government argued that pursuant to the separation of powers doctrine, habeas courts faced with petitions by persons in military detention should limit their review "to investigating only whether legal authorization exists for the broader detention scheme." 124 S.Ct. at 2645. Citing the same cases it cites here, see Resp. Emerg. Mot. at 9, the government argued that decisions related to war-making, including the detention of persons found in theaters of combat, belong exclusively to the Executive. Id. at 2647. And as it argues here, the government alleged in Hamdi that "military officers who are engaged in the serious work of waging battle would be unnecessarily and dangerously distracted by litigation half a world away, and discovery into military operations would both intrude on the sensitive secrets of

national defense and result in a futile search for evidence buried under the rubble of war." Id. at

2648 (citing Government Brief).

The Supreme Court rejected each of these identical arguments and left no doubt that

habeas courts reviewing military detention must examine the sufficiency of process provided to

habeas petitioners and examine the legality of their detention:

> [W]e necessarily reject the Government's assertion that separation of powers principles
> mandate a heavily circumscribed role for the courts in such circumstances. Indeed, the
> position that the courts must forgo any examination of the individual case and focus
> exclusively on the legality of the broader detention scheme cannot be mandated by any
> reasonable view of separation of powers, as this approach serves only to condense power
> into a single branch of government.... Whatever power the United States Constitution
> envisions for the Executive in its exchanges with other nations or with enemy
> organization in times of conflict, it most assuredly envisions a role for all three branches
> when individual liberties are at stake.

Hamdi, 124 S.Ct. at 1650 (emphasis in original). The Court went on to explicitly repudiate the

government's suggestion that a habeas court should only review the Executive's determination to

hold a person in military detention under the deferential "some evidence" standard. Id. at 2651.

The Court concluded that "a court that receives a petition for a writ of habeas corpus from an

alleged enemy combatant must itself ensure that the minimum requirements of due process are

achieved." Id.

It is eminently clear that the Supreme Court has rejected the government's arguments

concerning separation of powers and intrusion into the Executive's war-making powers, with

respect to habeas petitions brought by alleged enemy combatants held in military detention.

Here, Mr. Al-Kaby is an "Innocent Civilian" held in military detention, and a lawful permanent

resident of the United States as well. As such, this Court should ensure that minimum due

process requirements are achieved in his case. The first step to achieving due process protection

for Mr. Al-Kaby is to grant a TRO prohibiting the government from interrogating him, providing

him access to his counsel, and ensuring that he is present in person or by telephone for any and all hearings before this Court.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully request that the Court leave in place its September 2 Order to Show Cause directing Respondent to respond to the Petition on or before September 6, 2005. Petitioners also request that the Court grant the Temporary Restraining Order sought by Petitioners (a) allowing counsel for Petitioners to immediately meet and confer with Numan Al-Kaby, in private and unmonitored attorney-client conversations; (b) preventing further interrogations of Numan Al-Kaby while this litigation is pending; and (c) directing the Respondents to allow Numan Al-Kaby to be present, in person or telephonically, at any and all hearings on the petition for a writ of habeas corpus.

Respectfully submitted,


Mark D. Rosenbaum
Ranjana Natarajan
Ahilan T. Arulanantham
ACLU Foundation of Southern California
1616 Beverly Boulevard
Los Angeles, California 90026
Tel: (213) 977-9500, x224


Arthur B. Spitzer, D.C. Bar No. 235960
American Civil Liberties Union
of the National Capital Area
1400 20th Street, N.W. #119
Washington, D.C. 20036
Tel: (202) 457-0800

Kary L. Moss
Michael J. Steinberg
American Civil Liberties Union
of Michigan
60 West Hancock Street
Detroit, MI 48201

Tel: (313)578-6814

Steven R. Shapiro
Lucas Guttentag
Lee Gelernt
Ben Wizner
American Civil Liberties Union Foundation
125 Broad Street
New York, New York 10004
Tel: (212) 549-2500

Erwin Chemerinsky
Duke University School of Law
Science Drive & Towerview Road
Durham, North Carolina 27708
Tel: (919) 613-7173

Paul Hoffman
Schonbrun, DeSimone, Seplow, Harris &
Hoffman
723 Ocean Front Walk
Venice, California 90291
Tel: (310) 396-0731

Counsel for Petitioners:

September 4, 2005