**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
NUMAN ADNAN AL-KABY, *et al.,*            )
                                                          )
                              Petitioners,              )
                                                          )
                 v.                                      )            No. 05-1739 (JR)
                                                          )
GEORGE W. BUSH, *et al.*,                     )
                                                          )
                              Respondents.            )
_____)

**RESPONDENTS' OPPOSITION TO
PETITIONERS' MOTION FOR EXTENSION OF TIME**

**INTRODUCTION**

Petitioners brought this action seeking the release of Numan Al-Kaby from custody.  See
Petition, passim.  It is undisputed that Mr. Al-Kaby was in fact released from custody on
Tuesday, September 6, 2005.  See Respondents' Response to Order to Show Cause (Dkt 12);
Declaration of Ranjana Natarajan ("Natarajan Decl."), ¶ 3, attached to Petitioners' Motion for
Extension of Time to Show Cause Why the Petition Should Not Be Dismissed (Dkt 14) ("Pet.
Motion").[1]  In light of this fundamental change in the factual circumstances underlying the
Petition, this Court (Kennedy, J.) ordered Petitioners to show cause in writing by Monday,
September 12, why this action should not be dismissed.  See Order, Sept. 7, 2005 (Dkt 13).
Rather than respond to the Court's Order, Petitioners (who previously opposed even a short

_____

[1] The Natarajan Declaration filed with the Court is missing page 3, containing paragraphs
10-13, and Respondents therefore reserve the right to respond to any allegations raised in those
missing paragraphs if and when they are filed with the Court.

extension of time for Respondents to respond to the Court's initial show cause order)[2] now seek a three week extension in which to respond to the Court's show cause Order. Respondents oppose Petitioners' Motion and respectfully suggest that because Petitioners have failed to show cause why the Petition should not be dismissed, the Petition should be dismissed.

## BACKGROUND

Petitioners assert that they need an extension in order to be able to determine whether Mr. Al-Kaby will be subject to any legal disabilities as a result of his detention and whether the government will somehow restrict his travel. Pet. Motion at 1. Thus, for example, Petitioners assert that Mr. Al-Kaby "believes" that the government "may" refuse to renew his travel documents, Natarajan Decl., ¶ 7, and "may" impose other "legal disabilities" on him as a result of his detention, Pet. Motion at 3.[3] See also id. at 2 (referring to "possible" adverse consequence of his detention).[4] Notably, Petitioners do not allege that Mr. Al-Kaby has made any effort to renew

---

[2] After Judge Kennedy issued an order for respondents to show cause why the writ should not be granted, respondents requested an extension of time, asking for a total of either twenty-three days, or, in the alternative, three business days, to respond to the order to show cause. See Respondents' Emergency Motion for Reconsideration Of Dates Set Forth in Order to Show Cause and Opposition to Application to Application for Temporary Restraining Order (Dkt 9). Respondents opposed any such extension. See Petitioners' Opposition to Respondents' Emergency Motion for Reconsideration of Dates Set Forth in Order to Show Cause and Reply to Application for Temporary Restraining Order (Dkt 11).

[3] Petitioners' counsel's descriptions of her conversations with Mr. Al-Kaby are, of course, inadmissible hearsay.

[4] Petitioners' papers alternatively refer to Mr. Al-Kaby's "refugee passport," see, e.g., Natarajan Decl., ¶¶ 6-7, and to "refugee travel documents" issued pursuant to 8 C.F.R. § 223.2(b)(2), see, e.g., Pet. Motion at 2; Natarajan Decl., ¶ 6. They also complain that "the government has indicated that it is not familiar with 'refugee passports.'" Pet. Motion at 4; Natarajan Decl., ¶ 14. With respect to this latter comment, Petitioners' counsel first informed the undersigned via email late Friday afternoon that Mr. Al-Kaby's "refugee passport" allegedly expired during his detention, and asked the undersigned to "confirm in writing that Mr. Al-Kaby will not face problems with the *passport* renewal" (emphasis added). Based on this inquiry, the undersigned made inquiries of the Department of State – the agency responsible for issuing

his travel documents with the appropriate authorities (notwithstanding the contention that Mr. Al-Kaby would "like to return to the United States as soon as possible," see Natarajan Decl., ¶ 6). Nor do they allege that Mr. Al-Kaby is actually subject to any legal disability.  Indeed, Petitioners acknowledge that they are unaware of any specific legal obstacles actually faced by Mr. Al-Kaby. Pet. Motion at 4.  The fact that Petitioners seek additional time to determine whether Mr. Al-Kaby suffers any legal disabilities underscores the fact that there is no basis upon which Petitioners may now maintain this habeas Petition.

## ARGUMENT

The purpose of a habeas action, like any federal lawsuit, is not to provide plaintiffs with a forum in which they can identify hypothetical future injuries that might arise, but to remedy concrete and identified injuries that have occurred.  Once a petitioner has been released from custody, the burden is on a petitioner to identify actionable collateral consequences in order to avoid dismissal on the grounds of mootness.  Clearly, Petitioners here are unaware of any such

---

"passports" – with respect to the procedure by which "refugee passports" are renewed, only to learn that there is no such document known as a "refugee passport."  The undersigned so informed Petitioners' counsel early Monday afternoon, explaining: "With respect to what you refer to as Mr. Al-Kaby's 'refugee passport,' I have been informed that there is no such document known as a 'refugee passport.'  Thus, I was unable to obtain any information regarding how such a document might be renewed."  At no time did counsel for Petitioners make any reference to refugee travel documents or the CFR provision that they cite in their Motion prior to the filing of the Motion.  (In the same email exchange, the undersigned also informed Petitioners' counsel – in response to a prior inquiry – that "it is [the undersigned's] understanding that Mr. Al-Kaby is free to travel around Iraq in the same manner as is any other private individual in that country, at least insofar as American military authorities are concerned.")  Petitioners' assertion that they are "attempting to negotiate these issues with the government," Pet. Motion at 3, apparently refers to Petitioners' request that the Government confirm in writing that none of the Petitioners will suffer any disabilities or penalties as a result of Mr. Al-Kaby's detention.  Because, as explained below, Respondents have no legal obligation to establish the absence of collateral consequences, Respondents determined not to provide such written confirmation, and so informed Petitioners.

actual consequences.[5]  They should not be permitted a three-week fishing expedition to come up

with hypothetical injuries in a futile attempt to keep this now-moot lawsuit alive.

    The Supreme Court has long recognized that habeas petitions, like other cases, are

rendered moot when there is "no longer a . . . case or controversy under Article II, § 2, of the

Constitution."  Spencer v. Kemna, 523 U.S. 1, 7 (1998).  "'This case-or-controversy requirement

subsists through all stages of federal judicial proceedings, trial and appellate.'"  Id. at 7, quoting

Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990).  The Spencer Court first noted

that "[a]n incarcerated convict's . . . challenge to the validity of his conviction always satisfies the

case-or-controversy requirement, because the incarceration . . . constitutes a concrete injury."

Spencer, 523 U.S. at 7.  "Once the convict's sentence has expired, however, some *concrete* and

continuing injury other than the now-ended incarceration or parole – some 'collateral

consequence' of the conviction – must exist if the suit is to be maintained."  Id. (emphasis added).

    While the Supreme Court has been willing to "presume" certain collateral consequences

flowing from a wrongful criminal conviction, id. at 8, 12, it has expressly "refuse[d] to extend

[its] presumption of collateral consequences (or [its] willingness to accept hypothetical

consequences)" to other areas, id. at 12.  Thus, where a former inmate seeks to maintain a habeas

case after his release from custody, the inmate must "demonstrate such consequences" to

overcome the presumption of mootness.  Id. at 14.  Such consequences, moreover, like the

"concrete" injury necessary to maintain an ordinary federal lawsuit, must not be remote or

contingent.  That is, *possible* future injuries – like those identified by Petitioners here – expressly

do *not* suffice.  Id. at 14-16 (rejecting proffered collateral consequences that are merely

---

[5] Respondents do not concede that the hypothetical injuries conjured up by Petitioners would constitute actionable collateral consequences in any event, but, as discussed below, the Court need not reach that issue at this time.

possible).  Put another way, "Spencer . . . tries to bring the law of habeas corpus into conformity

with a general 'hardening' of standing requirements in recent years."  Diaz v. Duckworth, 143

F.3d 345, 347 (7th Cir. 1998).

       After Spencer, it is clear that Petitioners have the burden of proof with respect to

establishing any collateral consequences of the challenged detention and that, in order to save the

case from mootness, such consequences must be neither speculative nor remote.  See, e.g.

Kimberlin v. United States Parole Comm'n, 2004 WL 885215, at *1 (D.C. Cir. 2004) (petitioner

"must demonstrate continuing collateral consequences attributable to the challenged [parole]

decisions to avoid dismissal of his petition"; rejecting alleged inability to travel internationally as

actionable collateral consequence); Jackson v. California Dep't of Mental Health, 399 F.3d 1069,

1073 (9th Cir. 2005) (petitioner "must demonstrate that such [collateral] consequences exist")

Diaz,143 F.3d at 346 (Spencer places burden of establishing collateral consequences on

petitioner); DeFoy v. McCullough, 393 F.3d 439, 443 n.3 (3rd Cir. 2005) ("It is a petitioner's

burden to demonstrate that collateral consequences exist to avoid having a case dismissed as

moot."); United States v. Kissinger, 309 F.3d 179, 181 (3rd Cir. 2002) ("once a litigant is

unconditionally released from criminal confinement, the litigant must prove that he or she suffers

a continuing injury from the collateral consequences attaching to the challenged act"); United

States v. Meyers, 200 F.3d 715, 719 (10th Cir. 2000) (petitioner "bears the burden of

demonstrating the existence of actual collateral consequences resulting" from challenged action);

United States v. Probber, 170 F.3d 345, 348 (2d Cir. 1999) (petitioner "bears the burden of

demonstrating collateral consequences sufficient to meet Article III's case-or-controversy

requirement").

       Petitioners here, of course, have failed to allege, let alone establish, any concrete

collateral consequence of Mr. Al-Kaby's detention. They have pointed to no statutes or regulations imposing any legal disabilities upon Mr. Al-Kaby as a result of his detention.[6] Nor have they identified any other *actual* collateral consequences of his detention. All they have done is articulate various "possible" adverse consequences that Mr. Al-Kaby allegedly "believes" "may" happen as a result of his detention. Such conjecture and speculation, however, clearly is insufficient to meet Petitioners' burden of establishing the Court's continuing jurisdiction. Spencer, 523 U.S. at 16 ("It is purely a matter of speculation whether such" consequences will ever occur); Lujan v. Defenders of the Wildlife, 504 U.S. 555, 560 (1992) ("conjectural" or "hypothetical" injury insufficient to establish standing).[7]

And it should be deemed similarly insufficient as a basis for allowing Petitioners an additional three weeks to respond to this Court's Order. The purpose of a lawsuit is to remedy extant injuries. It is not to provide a party the opportunity to come up with some theory of possible future injury that, should it come to pass, might suffice to meet constitutional requirements, and then allow it to engage in a fishing expedition as it attempts to uncover possible perceived harms behind every door. Cf. United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375, 1382-83 (D.C. Cir. 1984). Petitioners brought this action to bring about the release of Mr. Al-Kaby. He was released. Because Petitioners acknowledge that they are

---

[6] This serves to distinguish the cases relied upon by Petitioners, Pet. Motion at 3, in which courts held that the *statutory* bar to re-entry to the United States upon certain immigration findings being challenged in those cases constituted a "concrete disadvantage imposed *as a matter of law*," Zegarra-Gomez, 314 F.3d 1124, 1127 (9th Cir. 2003) (emphasis added), and thus sufficed to establish a collateral consequence.

[7] As noted above, Respondents do not concede that any of the "possible" harms that Petitioners assert "may" come to pass constitute actionable collateral consequences. Because Petitioners have not alleged or established such harms, however, the Court need not reach this issue.

unaware at this time of any actual collateral consequence of Mr. Al-Kaby's detention – and thus can identify no ongoing harm they seek to remedy – the case is moot and should be dismissed.[8] The Court should not grant Petitioners additional time to attempt to find a way to gain some advantage or to seek to avoid the fact that the action is now moot.

## CONCLUSION

For the reasons discussed above, Respondents respectfully request that Petitioners' Motion be denied and – Petitioners having failed to provide any reason why the case should not be dismissed in response to the Court's Order – the Petition be dismissed.

Dated: September 13, 2005          Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

/s/ Ori Lev & Edward H. White
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
ORI LEV (D.C. Bar No. 452565)
EDWARD  H. WHITE (D.C. Bar No. 468531)
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.  Room 7330
Washington, D.C. 20530
Tel: (202) 514-2395
Fax: (202) 318-7589
email: ori.lev@usdoj.gov

Attorneys for Respondents

---

[8] Should any of the harms Mr. Al-Kaby hypothesizes about actually come to pass, he would, of course, be free to pursue any appropriate administrative or judicial recourse that might be available to him.

-7-