UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NUMAN ADNAN AL-KABY, *et al.*,<br><br>    Petitioners,<br><br>  v.<br><br>GEORGE W. BUSH*, et al.,*<br><br>    Respondents. | No. 05-cv-1739 (JR) |

**PETITIONER'S REPLY IN SUPPORT OF
MOTION FOR AN EXTENSION OF TIME**

It is surprising that the government so vehemently opposes a modest extension of time for a man it freed only days ago from incommunicado detention in Iraq, whose access to counsel is hampered by the unreliable telephone lines of a country experiencing severe disruptions in civil services. It is surprising not only because the government would not suffer any prejudice from an extension to allow Mr. Al-Kaby to inform his counsel what legal impediments he faces on account of his detention, but also because the government could, with little effort, moot this petition today by assuring the Court and Petitioner that he will suffer no legal disabilities as a result of his detention.

Petitioner has identified one clear adverse collateral consequence already extant as a result of his unlawful detention, as well as a number of other adverse legal consequences that are likely to befall him. Most important, he lacks a valid travel document to return to the United States because the government's unlawful detention prevented him from renewing his travel document. The same government now declines to assist Mr. Al-Kaby, a ten-year lawful permanent resident, to return to the United States. If the government provided him with valid travel documents tomorrow, which it

surely could, and assured Petitioner in writing that it will not act to strip him of his legal permanent resident status, or reject his citizenship application, or surveil or monitor him on account of his unlawful five-month detention, that would likely suffice to moot the petition. For reasons unknown and unexplained, however, the government refuses to help an innocent man who suffered needlessly in government detention. The government's stubborn refusal to provide such assurances only proves Petitioner's point that he will face adverse consequences and will lack the ability to redress them, unless the Court grants the modest extension sought.

Finally, it is remarkable that the government equates the three week extension sought by Mr. Al-Kaby with the three-week extension previously sought by the government. See Gov. Opp at 1-2 & n.2. The two are hardly comparable. The extension sought by Petitioner will not prejudice the government in any way. The extension sought by the government would have resulted in three additional weeks of incommunicado detention in solitary confinement for a man who had already been found innocent by the U.S. military. The government did not show good cause for its requested extension. Petitioner has shown good cause for his.

## ARGUMENT

The government concedes, as it must, that this Court has jurisdiction to provide relief from any collateral legal consequences faced by Mr. Al-Kaby as a result of his detention. Gov. Opp. at 4, citing Spencer v. Kemna, 523 U.S. 1 (1998). The government does not deny that if Mr. Al-Kaby is prevented from returning to the United States because the government prevented him from renewing his travel documents by unlawfully imprisoning him, that will constitute a collateral legal consequence meriting

further habeas relief. See Gov. Opp. at 6 n.7. The government does not argue that it would be prejudiced in any way by an extension of time. What the government's argument comes down to is that Mr. Al-Kaby, who was held in solitary confinement for five months despite being found innocent, should not have three additional weeks to determine and present to this Court the legal consequences he faces as a result of his detention because that might interfere with the government's desire to have this case dismissed before he is able to do so. This argument should be rejected, as explained below.

      First, the government argues that the extension should be denied because Mr. Al-Kaby has not alleged that he has made efforts to renew his travel documents. Gov. Opp. at 2. However, as explained in the accompanying declaration, counsel has been trying to contact Mr. Al-Kaby for days to determine whether he went to the U.S. Embassy in Baghdad and was able to get his travel documents renewed, to no avail. See Declaration of Ranjana Natarajan dated September 14, 2005. Petitioner sought the government's help on this issue precisely because Mr. Al-Kaby was certain that his efforts to get his travel documents renewed would fail without government assistance, either because of bureaucracy, complicated immigration law, or simply the difficulty of getting inside the U.S. embassy in Baghdad.

      The government next argues that the September 12 declaration of Petitioner's counsel, which recounts Mr. Al-Kaby's concerns about travel and other legal consequences, is inadmissible hearsay. Gov. Opp. at 2. First, the government could easily contest the truth of statements in counsel's declaration by providing evidence that Mr. Al-Kaby's travel documents have in fact been renewed, but it has not done so.

Second, counsel has been unable to reach Mr. Al-Kaby by phone or e-mail, thereby making it impossible to get a declaration from him. This is exactly why Petitioner needs an extension, so that he has time to make the necessary showing to the Court regarding why this petition should not be dismissed. Counsel has been working diligently to contact Mr. Al-Kaby, but with unreliable telephone and fax service in Iraq, it will take additional time to verify Mr. Al-Kaby's situation and submit the appropriate factual evidence.

The government's central argument is that it is Petitioner's burden to prove that collateral consequences exist. Gov. Opp. at 4-6. That may be so, but what has already been said about Petitioner's expired travel documents suffices to show that he is likely to carry that burden if given a reasonable opportunity to do so. The fact that the law imposes the burden on him is precisely why Petitioner needs additional time. Petitioner has also identified possible adverse collateral consequences relating to his pending application for U.S. citizenship and his status as a lawful permanent resident. See Motion at 3. More than this, Petitioner cannot do without additional time.

The government also complains that Petitioner's claims are not adequately "concrete" but then refuses to provide the Court with even a general statement of whether it intends to impose any adverse legal consequences on him. Petitioner, and the Court, would not have to read tea leaves if the government would simply assure the Court that it will not impose adverse consequences. Its refusal to provide any such assurance certainly does nothing to allay Petitioner's reasonable concerns.

Finally, the government insinuates that Petitioner requests this extension merely to conjure up "some theory of possible future injury." Gov. Opp. at 6. This is untrue.

4

Petitioner has identified at least three plausible collateral consequences that may immediately flow from his detention, and the government has failed to respond to any of these except to repeat that the burden is on Mr. Al-Kaby. Having locked up an innocent man in an Iraqi jail for five months without access to counsel or family, the government now seeks to wash its hands of him, perhaps leaving him stranded in Iraq with no way of returning to the United States. This is not "some . . . possible future injury" but a very clear and present danger to Mr. Al-Kabi's well-being.

The only reason the government gives for its failure to moot this petition by assuring the Court that no adverse legal consequences will befall Mr. Al-Kaby is that it has "no legal obligation to establish the absence of collateral consequences" and therefore has "determined not to provide such written confirmation." Gov. Opp. at 3 n.4. One cannot imagine a more callous position. Mr. Al-Kaby suffered isolation in solitary confinement, contracted tuberculosis and developed hypertension while in an Iraqi jail, and found upon his release that his wife had miscarried her pregnancy and divorced him. Natarajan Decl. ¶¶ 2-5. All of this was for naught, as Mr. Al-Kaby was innocent all along, as the government itself determined more than two months ago. Considering that the government took more than eight weeks to release Mr. Al-Kaby after he was found innocent, surely the government can afford to wait three weeks so that Petitioner and his counsel have a reasonable opportunity to determine whether a motion for further relief is necessary and, if it is, to present it to the Court.

## CONCLUSION

For the reasons explained above and in the motion, Petitioner's motion for an extension should be granted.

Respectfully submitted,

_____
Mark D. Rosenbaum
Ranjana Natarajan
Ahilan T. Arulanantham
ACLU Foundation of Southern California
1616 Beverly Boulevard
Los Angeles, California  90026
Tel:  (213) 977-9500, x224


_____
Arthur B. Spitzer
   D.C. Bar No. 235960
American Civil Liberties Union
    of the National Capital Area
1400 20th Street, N.W. #119
Washington, D.C.  20036
Tel: (202) 457-0800

Steven R. Shapiro
Lucas Guttentag
Lee Gelernt
Ben Wizner
American Civil Liberties Union Foundation
125 Broad Street
New York, New York  10004
Tel: (212) 549-2500

Erwin Chemerinsky
Duke University School of Law
Science Drive & Towerview Road
Durham, North Carolina 27708
Tel: (919) 613-7173

Paul Hoffman
Schonbrun DeSimone Seplow Harris & Hoffman
723 Ocean Front Walk
Venice, California  90291
Tel: (310) 396-0731

Counsel for Petitioners

September 14, 2005